IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| DAVID WHITLOCK,         ) | |
| )| |
|    Claimant,         ) | |
| ) | |
| v.         ) | CIVIL ACTION NO. |
| ) | 4:15-CV-01176-KOB |
| CAROLYN W. COLVIN,         ) | |
| ACTING COMMISSIONER OF         ) | |
| SOCIAL SECURITY,         ) | |
| ) | |
|    Respondent.         ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

On September 10, 2012, the claimant filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income. (R. 107). In both applications, the claimant alleged disability beginning August 27, 2012, because of the removal of his spleen and part of his pancreas, the presence of stomach ulcers, and uncontrolled diabetes. The Commissioner initially denied the claims on October 30, 2012, and, after the claimant's timely request, the ALJ held a video hearing on January 8, 2014.

In a decision dated March 25, 2014, the ALJ found that the claimant was not disabled as defined by the Social Security Act and was, therefore, ineligible for social security benefits. (R. 107-113). On May 11, 2015, the Appeals Council denied the claimant's request for review. (R. 1-6). Consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. The claimant has exhausted his administrative remedies, and the

1

court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

## II. ISSUES PRESENTED

The claimant presented the following isues for review:

1. whether the ALJ properly relied solely on the Medical-Vocational Grids to ascertain if jobs exist in significant numbers in the national economy that the claimant can perform; and

2. whether the Appeals Council erred in evaluating newly submitted evidence and failing to remand the case to the ALJ.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the ALJ applied the correct legal standards and if his factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 402 (1971).

The court must keep in mind that opinions such as whether a claimant is disabled, the

nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d). Whether the claimant meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as substantial evidence in the record supports it.

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not only look to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To make this determination the Commissioner employs a five-step,

sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986)[1]; 20 C.F.R. §§ 404.1520, 416.920.

After determining that the claimant cannot perform his past relevant work, the ALJ must articulate specific jobs that the claimant is able to perform, and substantial evidence must support this finding. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002); *see also Allen v. Sullivan* 880 F.2d 1200, 1201 (11th Cir. 1989).

The ALJ may determine whether the claimant has the ability to adjust to other work in the national economy by applying the Medical-Vocational Grids or by use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). When a claimant cannot perform a *full range* of work at a given level of exertion or has nonexertional impairments that significantly limit basic work skills, an ALJ's exclusive reliance on the Medical-Vocational Grids to support a finding of nondisability is inappropriate. *Id*. at 1242; *see also Wilson*, 284 F.3d at 1227; *Jones v.*

---

[1] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) was a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

*Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999); *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). A *full range* of work means that the claimant is able to do *unlimited* types of work at the given exertional level. *Phillips,* 357 F.3d at 1241 (emphasis added).

If nonexertional impairments exist, the ALJ may use Medical-Vocational Grids as a framework to evaluate vocational factors, but *must* also introduce independent evidence, preferably through a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform. *Wolfe v. Chater*, 86 F.3d 1072, 1077-78 (11th Cir. 1996) (emphasis added). Also, for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question that comprises all of the claimant's impairments. *Vega v. Comm. of Social Security*, 265 F.3d 1214, 1220 (11th Cir. 2001); *see also Jones*, 190 F.3d at 1229.

When the claimant submits "new and material" evidence "relat[ing] to the period on or before the date of the administrative law judge hearing decision" to the Appeals Council after the ALJ hearing, and the Appeals Council makes the new evidence part of the record, this court may determine whether the failure of the Appeals Council to adequately consider that evidence warrants a remand. *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 745 (11th Cir. 2011); *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). Such evidence is considered material and potentially worthy of remand if "there is a reasonable possibility the new evidence would change the administrative outcome." *Flowers*, 441 F. App'x at 745. Evidence dated after an ALJ decision may be chronologically relevant if it relates back to the period before the ALJ's decision. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F. 3d 1317, 1322. (11th Cir. 2015).

## V. FACTS

The claimant was forty-two years old on the date of the ALJ's decision. (R.104,122,221,228). He has an eleventh grade education and past relevant work as a mobile home assembler. (R.123, 130, 257). The claimant alleged he became disabled on August 27, 2012, because of the removal of his spleen and a portion of his pancreas, and the presence of stomach ulcers and uncontrolled diabetes. (R.221,256).

*Physical Limitations*

On February 11, 2012, Dr. Diamond at Marshall Medical Center South admitted the claimant for pancreatitis and gave him intravenous antibiotics and morphine for pain.

Dr. Diamond again admitted the claimant to Marshall Medical Center South on August, 29, 2012 and diagnosed him with a pleural effusion from a pancreatic pleural fistula, chronic recurring pancreatitis, and alcoholism. The medical records from this visit indicate that the claimant has a history of alcoholism, smokes cigarettes, and uses marijuana. Medical Center South discharged the claimant and moved him to the University of Alabama Hospital (UAB) on August 30, 2012. (R. 338-42). After his admittance to UAB, Dr. John Christein diagnosed the claimant with chest and back pain, alcohol abuse, pancreatitis, and concern of a pancreatici pleural fistula. (R. 389).

On September 11, 2012, the claimant underwent surgery at UAB to remove his spleen and part of his pancreas. (R.385). The surgeon, Dr. Jonathan Chrislin at Kirkland Clinic, instructed the claimant to do no heavy lifting, straining, or strenuous activity for at least six to eight weeks. ( R. 390).

Dr. Diamond at Marshall Medical Center South again admitted the claimant on October,

3, 2012 and placed him in the ICU for diabetic ketoacidosis, onset diabetes mellitus, and surgical wound infection with methicillim resistant staphylococcus aureus, electrolyte abnormalities, and elevated liver function tests. Dr. Diamond discharged the claimant and transferred him to the University of Alabama Hospital on October 6, 2012. (R. 303-304).

The claimant's wife, Donna Whitlock, completed a Function Report on the claimant on October 17, 2012, indicating that, the since his surgery, the claimant does not take personal care of himself like he used to; has less energy; has low self-esteem; need reminders about taking medicines; does not eat the foods he used to eat; can go outside for ten or fifteen minutes at a time; has poor vision because of his diabetes; watches TV daily as his only hobby; has no social interaction with others; cannot lift, squat, bend, kneel, or concentrate; and has "a lot of stress because of [his] surgery." (R. 263-270).

On October 24, 2012, the claimant saw Jonathan Dean at Premier Family to establish care with a medical doctor on a regular basis. Dr. Dean stated that the claimant has what "sounds like very brittle diabetes mellitus" and referred him to an endocrinologist for further evaluation. (R. 443).

Dr. Lisa Mani, the state agency medical consultant, reviewed the claimant's records on January 17, 2013 and found that the claimant had the residual functional capacity to perform light work with the following limitations: can lift up to 20 pounds occasionally and 10 pounds frequently; can stoop, kneel, and crouch occasionally; can never crawl; can stand, walk, and sit for six out of eight hours in a day; and should avoid concentrated exposure to extreme cold, heat, wetness, and humidity. (R. 153-54, 446).

Tanya A. Hunter, a single decision maker with the Social Security Administration,

completed a case analysis for the claimant on January 18, 2013 based on the claimant's medical records. In her analysis, she agreed with Dr. Mani's findings and stated that the claimant could not return to his past work as an assembler, but could perform other jobs pursuant to Vocation Rule 202.18. (R. 447).

Dr. Dean again examined the claimant on May 8, 2013, because he complained of chronic pain and difficulty controlling his blood sugar. The claimant stated that he had experienced pain since his surgery and had taken a large quantity of ibuprofen, yet was still in a lot of pain. Dr. Dean referred the claimant to an endocrinologist and to a pain management center. (R.458-61).

On June 4, 2013, Dr. Dominic Homan, an endocrinologist, saw the claimant, who diagnosed him with diabetes mellitus type 1 because of his pancreatecomy. (R. 466-468). Dr. Homan discussed with the claimant the need for protein and complex carbohydrate in his diet; stressed the importance of an exercise program; changed his medication from Novolgo to Humalog via a Luxura pen starting at one-half unit each meal; and discussed cessation of smoking. (R. 465-69).

Dr. Diamond admitted the claimant to Marshall Medical Center South on December 6, 2013 for abdominal pain, nausea, and vomiting. A CT of his abdomen showed a "suggestion of minimal acute-on-chronic pancreatitis." Dr. Jeffrey Barton performed an esophagogastroduodenoscopy that showed a duodenal ulcer and a small hiatal hernia. Dr. Diamond prescribed 40 mg daily of Protonix, one gram of Carafate four times a day, and Ultram as needed for pain. The hospital discharged the claimant on December 10, 2013, after his pain had improved. (R.533-560).

On March 17, 2014, Dr. James A. Clement admitted the claimant to Marshall Medical

Center South after another visit to the emergency room with abdominal pain, nausea, and vomiting blood. Dr. Clement diagnosed the claimant with acute chronic pancreatitis with pseudocyst, hypokalemia, elevated liver function test, diabetes mellitus, and hypertension. Dr. Clement order a CT scan of the claimant's abdomen and pelvis, which showed acute pancreatitis and some low developing pseudocyst. After his labs slowly improved, Dr. Clement discharged the claimant on March 28, 2013. (R.470-80).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for disability insurance benefits and supplemental security income, the claimant requested and received a hearing before an ALJ on January 8, 2014. At the hearing, the claimant testified that he is unable to work primarily because of having his pancreas removed and uncontrolled diabetes.

The claimant lives with his wife and stepson and previously worked at a mobile home manufacturing plant putting in doors, windows, roofs, and other mobile home parts. The claimant stated that he became disabled after his pancreas fused with his lung resulting in removal of the spleen and part of his pancreas. He claimed that when doctors removed his spleen and part of his pancreas he became a diabetic, and his diabetes became uncontrollable.

The claimant stated that his blood sugar has "bottomed out" several times and that his stepson had to watch him and monitor his sugar levels. He claimed that he must check his blood sugar every hour with a finger stick to insure that it does not fluctuate too much. The claimant stated that he takes a 24-hour acting insulin every night, another insulin medication before each meal, Humalog, and NovoLog; his blood sugar fluctuates from 34 to 500 causing his fatigue; he experiences different symptoms based on whether his sugar level is high or low; and he is afraid

to go to sleep because his sugar levels may plument.

According to the claimant, a typical day would includ getting up to shower, sitting in the living room for an hour, and then going to lay back down until his wife gets home from work. The claimant spends 90 percent of his time in bed because of his stomach ulcers. The claimant testified that his pain relievers containing Aspirin do not help enough for him to get out of bed; his stomach ulcers make him "fold over," causing him to stay in the bed; he becomes dizzy within fifteen to twenty minutes of getting out of bed; and he has no "pain free" days.

Vocational expert Dr. Mann testified concerning the type of work that the claimant had performed. Dr. Mann classified the claimant's previous work as a mobile home assembler, which is a medium, semi-skilled position. The ALJ posed no hypothetical questions to Dr. Mann.

The claimant's attorney then questioned Dr. Mann about the vocational significance of an individual who had to have frequent breaks, including two extra breaks in the morning and two extra brakes in the afternoon varying from five to fifteen minutes. Dr. Mann stated that "those unplanned disruptions in the work schedule would significantly impair work performance and in all likelihood the person could not maintain employment." Also, when asked about absenteeism, Dr. Mann stated that an individual in an unskilled job could miss less than two days a month. (R. 131).

*The ALJ Decision*

On March 25, 2014, the ALJ issued a decision finding that the claimant was not disabled under the Social Security Act. (R. 113). The ALJ found that the claimant met the insured status requirement of the Social Security Act through June 30, 2014, and that he had not engaged in

substantial gainful activity since August 27, 2012.

The ALJ found that the claimant suffered from the severe impairments of "status post pancreatectomy and splenectomy," and uncontrolled diabetes mellitus. The ALJ found these impairments to be severe, "significantly limit[ing] [the claimant's] physical or mental ability to do basic work activities," as defined in sections 404.1520(c) and 416.920(c). 20 C.F.R. §§ 404.1520(c), 416.920(c) (2013). (R. 109-110).

The ALJ also indicated that, although the claimant has a history of substance abuse, he has repeatedly reported that he has been clean and sober. Thus, the ALJ found that the claimant's "substance abuse was involved but is not material." (R. 110).

The ALJ then found that the claimant did not have any impairment or combination of impairments that met a Listing, including Listing 5.00: Digestive system and Listing 9.00: Endocrine disorders. (R. 110). In making this finding, the ALJ discussed and reviewed the claimant's symptoms, the claimant's testimony, the wife's adult function report, and all of the medical records before him. After considering all of the evidence, the ALJ found that the medical evidence of record does not support a finding of total disability. The ALJ stated that, "apart from the claimant's emergency room treatment and hospitalizations, the medical evidence contains little evidence of ongoing treatment."

The ALJ gave minimal weight to State agency medical consultant Dr. Lisa Mani's opinion that the claimant can perform a limited range of light exertional activity, because the evidence received at the hearing level supports greater limitations. The ALJ considered the claimant's treating sources advice that he should not do any heavy lifting, strenuous activity, or straining for six to eight weeks. The ALJ accorded no weight to the Ms. Hunter's opinion as a

State agency single decision maker because she was not an acceptable medical source. (R.110).

The ALJ found that the claimant's allegations and testimony were only partially credible because the medical evidence did not establish that the claimant's impairments were of a level and severity that would result in debilitating limitations. The ALJ noted that the claimant's recent treatment had been sporadic, routine, and conservative in nature; that the claimant's activities of daily living were self-restricted because no physician advised him to "stay home all day, lie down during the day, or restrict his activities of daily living in any manner"; that no physicians has advised the claimant to refrain from performing all gainful work; and that his doctors have advised him to "stay active and exercise." (R.112).

Based on all of the medical evidence in the record, the ALJ found that the claimant had the residual functional capacity to perform a full range of sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) and, therefore, was unable to perform any of his past relevant work at the medium exertional level. After considering the claimant's age, education, work experience, and residual functional capacity to perform a full range of work at the sedentary exertional level, the ALJ applied the Medical-Vocational Grids and found that jobs exist in significant numbers in the national economy that the claimant can perform. Based on the claimant's residual functional capacity for the full range of sedentary work, the ALJ found that the claimant was not disabled as directed by the Medical-Vocational Rule 201.25. (R. 113).

*Records submitted to the Appeals Council after the ALJ Decision*

On April 3, 2014, Dr. Diamond at Marshal Medical Center South admitted the claimant for abdominal pain and gave intravenous fluids, gut rest, and instructed him to follow up at UAB's outpatient services. Dr. Diamond also suggested that the claimant might be a candidate

for total pancreatectomy; that the claimant's symptoms of pain would probably require treatment at a pain control center; and that he needed to avoid any illicit drugs or alcohol. Dr. Diamond referred the claimant to the Gadsden Pain Center and also scheduled the claimant for an appointment with Dr. Wilcox at UAB. (R. 78-90).

Dr. Diamond admitted the claimant to Marshall Medical Center South on June 1, 2014, after an emergency room visit. The claimant stated that he had abdominal pain and that he ran out of his pain medication and Pancreases enzyme several days before this episode. Dr Winter Wilson, a gastrointestinal specialist, consulted the claimant regarding his abdominal pain and abnormal liver function test. The claimant told Dr. Wilson that he had not touched alcohol for twenty months and three weeks. Dr. Wilson recommended that the claimant receive IV hydration, pain medication, and a magnetic resonance cholangiopancreatography because of mild blockage of the biliary system. Dr. Diamond discussed with the claimant the need for compliance with his medications and taking his pancreatic enzymes and instructed the claimant to start back on his Pancrease enzyme. Dr. Diamond discharged the claimant on June 6, 2014 with his routine medications and a prescription for Lortab. (R. 47-53).

On September 27, 2014, Dr. Robinson with Marshall Medical Center South admitted the claimant for a head injury after he fell twenty feet out of a tree. Dr. Robinson ordered a head, chest, abdominal, and a cervical spine CT. The head CT was normal when compared to the claimant's last head CT; the chest CT showed that the claimant's lung volume was hyperinflated, indicating COPD, and that his lungs had worsened since the 2012 chest CT; the abdominal CT showed chronic pancreatitis; and the cervical spine CT showed no visible displaced fracture, bone destruction, or spinal stenosis. However, Dr. Robinson noted degenerative changes at

several levels in the mid and lower cervical spine. The diagnostic imaging report performed on the claimant showed a fracture of the distal radium and ulna and dislocation injuries of the third, fourth, and fifth finger. (R. 17-26).

On October 6, 2014, the claimant sought treatment with Dr. Alan Kitchens at the Marshall Medical Center South's Emergency Department for an injury to his right wrist and middle finger. Dr. Kitchens instructed the claimant to not work with his hand and to follow up with an orthopedic surgeon as scheduled. (R. 17).

## VI. DISCUSSION

1. *Use of Medical-Vocational Grids*

The claimant argues that the ALJ improperly used the Medical-Vocational Grids to find that the claimant could perform other work that existed in significant numbers in the national economy. To the contrary, this court finds that the ALJ properly considered the Medical-Vocational Grids.

If the claimant is unable to perform his past relevant work, the ALJ must determine whether the claimant can perform other work. *Wilson*, 284 F.3d at 1227; *see also Crayton v. Sullivan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ is not required to rely on a vocational expert to outline employment opportunities if the claimant can complete a full range of work at any exertional level and has no non-exertional limitations. If these requirements are met, the ALJ can apply the Medical-Vocational Grids alone to determine whether other jobs exist in significant numbers in the national economy that the claimant can perform. *Welch v. Bowen*, 854 F.2d 436, 438-39 (11th Cir. 1988); *see also Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. 1981).

The ALJ determined that the claimant had the residual functional capacity to perform a

*full* range of sedentary work, and the claimant failed to provide medical evidence that he had any non-exertional limitations that would require the ALJ to consider additional testimony from a vocational expert. Because the record supported the finding that the claimant had no non-exertional limitations, the ALJ could use the Medical-Vocational Grids alone, rather than testimony from the vocational expert, to determine whether work exists in significant numbers that the claimant could perform.

This court finds that the ALJ, after considering the claimant's age, education, and work experience, properly applied the residual functional capacity for a full range of sedentary work to Medical-Vocational Rule 201.25 and correctly found that other jobs exist in significant numbers in the national economy that the claimant can perform.

2. *Evidence Submitted to the Appeals Council*

The claimant argues that the Appeals Council erred in not considering submissions dated after the ALJ's decision and it improperly denied review. This court disagrees.

Failure of the Appeals Council to adequately consider new, material, and chronologically relevant evidence that the claimant submits to it can be grounds for a remand. *Washington*, 806 F.3d at 1320-21; *see also Flowers*, 441 F. App;x at 745. However, in this case, the material was neither chronologically relevant nor material.

After the ALJ's decision on March 25, 2014, the claimant submitted to the Appeals Council medical records from Marshall Medical Center dated April 3, 2014 through October 6, 2014, which included four instances where a physician treated the claimant. Two of these visits involved injuries totally unrelated to the issue of the claimant's alleged disability:  on September 27, 2014,  the claimant fell out of a tree, and the doctor evaluated him for a head injury (R. 25-

47); and on October 6, 2014, the claimant visited the emergency room for an injury to his right wrist (R. 12-22).

These records also included two other hospital visits, where the claimant complained of abdominal pain: on April 3, 2014, the claimant went to the emergency room with a complaint of abdominal pain and doctor's noted relapsing chronic pancreatitis and difficultly managing diabetes mellitus (R. 75-103); and on June 1, 2016, the claimant again visited the emergency room regarding his chronic recurrent pancreatitis, complications of previous pancreatic resection surgery, chronic pain syndrome as a result of the pancreatitis, and diabetes mellitus (R. 48-66).

Regarding these records, the Appeals Council stated "we also looked at medical records from Marshall Medical Center, dated April 3, 2014 through October 6, 2014 . . . This new information is about a later time. Therefore, it does not affect the decision about whether [the claimant was] disabled beginning on or before March 25, 2014."  (R. 2).

The Appeals Court appears to have considered the records, but found that they did not relate back to the ALJ's decision.  The September 27, 2014 and October 6, 2014 records did not relate back because they involved injuries totally unrelated to the issue of the claimant's alleged disability. The April 3, 2014 and June 1, 2014 records of the two hospital visits with complaints of abdominal pain involved the claimant's symptoms from his pancreatitis, but those records were not material, and the Appeals Council's refusal to remand the case to the ALJ based on these records was not reversible error.

Those records are not material because no reasonable possibility exists that the ALJ would have changed his administrative decision as a result of the claimant seeking medical attention for his pancreatitis on only *two* occasions in the seven months following the ALJ's

16

March 24, 2014 decision. Although the April 3, 2014 and June 1, 2014 records involved complaints about his pancreatitis, one of those visits revealed that he ran out of his enzymes several days before, which may have caused his episode. The ALJ had acknowledged other times when the claimant ran out of his enzymes, and another later episode based on the claimant's failure to take his enzymes does not support a reasonable possibility that the ALJ would have changed his decision. Moreover, the medical records relating to his abdominal pain and pancreatitis contained no new diagnostic information, but repeated medical information about his chronic pancreatitis that the ALJ had knowledge of prior to his decision. *See Washington*, 806 F.3d 1321-22.

This court concludes that the ALJ properly used the Medical-Vocational Grids in determining whether work existed in substantial numbers that the claimant could perform, and that the Appeals Council committed no error in its consideration of the medical records the claimant submitted dated after the ALJ's decision.

### VII. CONCLUSION

For the reasons stated above, this court concludes that the decision of the Commissioner is due to be AFFIRMED.

The court will enter a separate Order accordance with this Memorandum Opinion.

DONE and ORDERED this 9th day of September, 2016.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE